UNITED STATES DISTRICT COURT
MIDDLE DISTRICT OF TENNESSEE
NASHVILLE DIVISION

| | |
|---|---|
| SUSAN K. UNICE, ) | |
| ) | |
| Plaintiff, ) | |
| ) | |
| v. ) | No. 3:16-cv-02469 |
| ) | Judge Trauger/Brown |
| NANCY A. BERRYHILL, ) | |
| Acting Commissioner of Social Security, ) | |
| ) | |
| Defendant. ) | |

To: The Honorable Aleta A. Trauger, United States District Judge

**REPORT AND RECOMMENDATION**

Pursuant to 42 U.S.C. § 405(g), Plaintiff seeks judicial review of the Social Security Commissioner's decision that (1) Plaintiff and her daughter were overpaid disability benefits under Title II of the Social Security Act and (2) recovery of the overpayment would not be waived. For the following reasons, the Magistrate Judge **RECOMMENDS** that *Plaintiff's Motion for Judgment Based Upon the Administrative Record* (Doc. 18) be **GRANTED IN PART** and **DENIED IN PART** and the Commissioner's decision be **AFFIRMED IN PART**, **REVERSED IN PART**, and **REMANDED** for further consideration and explanation as to whether Plaintiff and her daughter were overpaid.

**I. PROCEDURAL HISTORY**

After receiving a fully favorable disability decision from an administrative law judge ("ALJ") in 2010, Plaintiff and her daughter were awarded Title II disability benefits beginning March 2008. (AR, pp. 44-62).[1] Payment continued through July 2012. (*Id.* at 116-117).

---
[1] Citations to the administrative record ("AR") (Doc. 16) are to the Bates stamp at the top right corner of the page.

The Commissioner notified Plaintiff in July 2011 and again in August 2012 that her disability ended in October 2009 because she was engaged in substantial gainful activity ("SGA"). (*Id.* at 67-69, 74-76, 81-86). In the August 2012 correspondence, the Commissioner explained that Plaintiff's SGA made her and her daughter ineligible for benefits as of January 2010. (*Id.* at 74-76, 81-86). Shortly thereafter, the Commissioner sent Plaintiff invoices requesting repayment of $56,097.20, the amount paid to Plaintiff and her daughter from January 2010 to July 2012. (*Id.* at 91-98).

Plaintiff requested a waiver of the overpayment in January 2013. (*Id.* at 28-35). The Commissioner denied Plaintiff's request on initial review and after a personal conference. (*Id.* at 100-101, 109-115). After a hearing before an ALJ, Plaintiff's request for waiver of the overpayment was again denied. (*Id.* at 20-27, 405A-444). Specifically, the ALJ found Plaintiff was overpaid $56,097.20 in benefits between January 1, 2010 and July 1, 2012; Plaintiff was not at fault for causing the overpayment; recovery of the overpayment would not defeat the purpose of Title II of the Social Security Act and would not be against equity and good conscience; and recovery of the overpayment would not be waived. (*Id.* at 25-27). The Appeals Council declined to review the ALJ's decision. (*Id.* at 3-7).

Plaintiff appealed the Commissioner's decision to this Court. (Doc. 1). The matter was referred to the Magistrate Judge. (Doc. 9). Presently pending is the fully briefed *Plaintiff's Motion for Judgment Based Upon the Administrative Record*. (Docs. 18, 18-1, 22, 23, 26, 27).

## II. REVIEW OF THE RECORD

### A. Self-Employment Activities

Plaintiff has an associate degree in business administration and a paralegal certification. (AR, p. 440). In 2008, Plaintiff and her husband formed a South Carolina limited liability

company that provides private security services, Advanced Protection Services, LLC (the "company"). (*Id.* at 379-381, 421). The company now has a license to operate in Arizona as well as South Carolina. (*Id.* at 421). Plaintiff owns 51% of the company, and her husband owns the remaining 49%. (*Id.* at 409). Plaintiff is the company's agent for service of process, and she holds the titles of President and Chief Financial Officer ("CFO"). (*Id.* at 379, 420). She states these positions are nothing more than titles. (*Id.* at 434-435).

In correspondence with the Commissioner in June 2011, Plaintiff said the company is overseen by her husband in South Carolina and she spends between six and ten hours a week paying bills and processing licenses on behalf of the company. (*Id.* at 396). Plaintiff later told the Commissioner in May 2012 that she spends approximately 25 hours each month performing managerial duties for the company. (*Id.* at 390). As of May 2012, Plaintiff lived in Arizona where she oversaw the company's financial, licensing, insurance, and human resources matters. (*Id.*).

During the administrative hearing, Plaintiff testified as to her involvement in the company. From 2008 to 2012, Plaintiff oversaw the expenses and startup of the business and otherwise oversaw "[e]verything that's done." (*Id.* at 420-421). Asked if she materially participated in the day-to-day operations of the company, Plaintiff said she did to the extent of overseeing the financial and sometimes the legal end of things. (*Id.* at 436-437). Between 2008 and 2011, Plaintiff stated she spent between 8 to 12 hours a week doing business-related activities, later clarifying she spent more time when the company was founded. (*Id.* at 424-425, 434).

Plaintiff lived in South Carolina from 2008 to 2011. (*Id.* at 421). Part of her home was used for the company. (*Id.* at 424). She sat in on some of the employment interviews, and the

ultimate hiring decision was made by her husband and other officers. (*Id.* at 421-422). She and her husband advertised available job openings online. (*Id.* at 422-423). When a new client would come onboard, Plaintiff was responsible for preparing and signing the contracts with them. (*Id.* at 423). She made bank deposits for the company, and before the company started using an online bill paying service, Plaintiff was responsible for paying business expenses with checks. (*Id.* at 423-424, 441). Payroll, monthly expenses, taxes, and employee hour schedules were performed by another individual. (*Id.* at 421, 423-424).

In 2011, Plaintiff moved to Arizona and assisted the Arizona office. (*Id.* at 421, 425). The Arizona business had two employees and had contracts with national companies that called Plaintiff from time to time. (*Id.* at 426). Plaintiff's husband performed the interviews in the Arizona office, though she participated in one interview. (*Id.*). As with the South Carolina office, Plaintiff made bank deposits for the Arizona office. (*Id.* at 441).

Plaintiff agreed with counsel's statement that her activity in the business was primarily to protect her interest in the company. (*Id.* at 434, 437). She testified she was not aware she had income because she did not receive W-2s or checks. (*Id.* at 436). However, she received annual payments from the company: $12,720.05 in 2009 and $12,841 in 2010. (*Id.* at 121).

**B. Financial Status**

Plaintiff reported that after the award of Title II benefits, she lost her home and both she and her husband declared Chapter 7 bankruptcy. (*Id.* at 34).

In 2009, Plaintiff's company had a total income of $249,836. (*Id.* at 182). Plaintiff received $12,720.05 from the company 2009 and $12,841 in 2010. (*Id.* at 121). Though these payments were originally reported as self-employment income, after the administrative hearing

Plaintiff amended her tax returns to recharacterize her earnings as passive income. (*Id.* at 215, 256, 366-378).

On January 15, 2013, Plaintiff reported her family had $330,000 in readily available funds. (*Id.* at 31). Of this amount, $31,663 was in her daughter's savings account, $300,000 was in Plaintiff's inherited individual retirement account ("IRA"), and $400 was in a joint checking account shared by Plaintiff and her husband. (*Id.*). Plaintiff reported monthly household expenses as $4,232, which included payment of a business loan. (*Id.* at 33-34).

### III. LEGAL STANDARD

#### A. Venue and Choice of Law

An application for judicial review of the Commissioner's final decision must be brought in the judicial district where the claimant resides. 42 U.S.C. § 405(g). As Plaintiff presently resides in Williamson County, Tennessee (Doc. 1-1), her appeal to the Middle District of Tennessee is appropriate. The merits of the ALJ's decision, however, shall be reviewed under Ninth Circuit precedent because the ALJ's decision was rendered in the District of Arizona. *See Shaw v. Colvin*, No. 1:14-CV-00081-FDW, 2014 WL 6680412, at *1 (W.D.N.C. Nov. 25, 2014) (applying the law where the administrative proceedings occurred); *Pierce v. Colvin*, No. 7:12-CV-129-D, 2013 WL 3326716, at *3 (E.D.N.C. July 1, 2013) (same); *Mannella v. Astrue*, No. CIV06-469-TUC-CKJ BP, 2008 WL 2428869, at *1 (D. Ariz. June 12, 2008) (same).

#### B. Standard of Review

The district court's review of an unfavorable disability decision is strictly limited to considering whether the decision is supported by substantial evidence and was made using the correct legal standards. *Rounds v. Comm'r Soc. Sec. Admin.*, 807 F.3d 996, 1002 (9th Cir. 2015) (quoting *Molina v. Astrue*, 674 F.3d 1104, 1110 (9th Cir. 2012)). It is well-established that

substantial evidence is "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion, and must be 'more than a mere scintilla,' but may be less than a preponderance." *Id.* (internal quotations omitted) (quoting *Molina*, 674 F.3d at 1110-11).

## C. Administrative Proceedings

Pursuant to the Social Security Act, the Commissioner may recoup overpaid benefits. 42 U.S.C. § 404(a)(1). If the claimant was not at fault for the overpayment, the Commissioner shall not recover or adjust the claimant's benefits "if such adjustment or recovery would defeat the purpose of this subchapter or would be against equity and good conscience." *Id.* § 404(b)(1). The Commissioner bears the burden of proving the fact and amount of the overpayment. *McCarthy v. Apfel*, 221 F.3d 1119, 1124-25 (9th Cir. 2000). Once the Commissioner establishes overpayment, the claimant bears the burden of proving she was "without fault" and that collection of the overpaid benefits would defeat the purpose of the subchapter or would be against equity and good conscience. *Id.* at 1126 (citation omitted); *Harrison v. Heckler*, 746 F.2d 480, 482-83 (9th Cir. 1984) (discussing the burden of proof in the context of Title XVI benefits).

## IV. CLAIMS OF ERROR

Plaintiff presents four claims of error: (1) the ALJ erred by finding Plaintiff was overpaid; (2) the ALJ erred by concluding waiver of adjustment or recovery of overpaid benefits was not against equity and good conscience; (3) the ALJ abused her discretion by finding waiver of adjustment or recovery of overpaid benefits does not defeat the purpose of Title II; and (4) the ALJ deprived Plaintiff of her rights to due process and equal protection by failing to reinstate her benefits. (Doc. 18-1, pp. 3-4, 9-24).

## V. ANALYSIS

### A. Overpayment

The first issue presented is whether substantial evidence supports the ALJ's conclusion that Plaintiff and her daughter were overpaid benefits under Title II of the Social Security Act and whether the ALJ's decision is procedurally correct. A claimant has been overpaid where she has received more benefits than she is entitled. 20 C.F.R. § 404.504. Plaintiff and her daughter received Title II benefits from March 2008 to July 2012. (AR, pp. 116-117). The ALJ concluded Plaintiff and her daughter were not entitled to these benefits from January 2010 to July 2012 because Plaintiff was engaged in SGA. (*Id.* at 25). The key question, therefore, is whether substantial evidence supports the ALJ's conclusion that Plaintiff was engaged in SGA from January 2010 to July 2012.

#### 1. Substantial Gainful Activity Defined

For purposes of the Social Security Act, SGA has two components: it is work activity that is both substantial and gainful. 20 C.F.R. § 404.1572. "Substantial work activity is work activity that involves doing significant physical or mental activities. Your work may be substantial even if it is done on a part-time basis or if you do less, get paid less, or have less responsibility than when you worked before." *Id.* § 404.1572(a). "Gainful work activity is work activity that you do for pay or profit. Work activity is gainful if it is the kind of work usually done for pay or profit, whether or not a profit is realized." *Id.* § 404.1572(b).

Where a claimant is self-employed, the claimant's activities and the value they provide to the business are considered to see if the claimant engaged in SGA. *Id.* § 404.1575(a)(2). Income is not the sole consideration because a number of factors, including "capital investment and profit-sharing agreements," may alter the amount of a claimant's income. *Id.* Further, the

claimant's activities are considered regardless of whether she receives an immediate income from those services. *Id.* Three tests are generally used to determine if a self-employed claimant engaged in SGA. *Id.*

First, the claimant engaged in SGA if she "render[ed] services that are significant to the operation of the business and receive[d] a substantial income from the business." *Id.* § 404.1575(a)(2)(i). In a multi-person, non-farm business, a claimant's services were significant if she worked more than half the time required to manage the business or spent more than 45 hours a month managing the business. *Id.* § 404.1575(b)(1). Substantial income is determined from countable income—the claimant's net income after business and other expenses. *Id.* § 404.1575(c)(1). Income is substantial when countable income averages more than described in § 404.1574(b)(2) or is comparable to the claimant's income before serious impairment or an unimpaired person's income in the community in the same business. *Id.* § 404.1575(c)(2).

Second, the claimant has engaged in SGA if her "work activity, in terms of factors such as hours, skills, energy output, efficiency, duties, and responsibilities, is comparable to that of unimpaired individuals in [the claimant's] community who are in the same or similar businesses as their means of livelihood." *Id.* § 404.1575(a)(2)(ii).

Third, the claimant has engaged in SGA if her work activity is clearly worth more than the amount described in § 404.1574(b)(2). *Id.* § 404.1575(a)(2)(iii).

A separate test applies to work activity performed after a claimant has received benefits for at least 24 months. *Id.* § 404.1575(e)(1). If the claimant's countable income averages more than the amounts in § 404.1574(b)(2) and the claimant rendered significant services in those months, the claimant engaged in SGA. *Id.* § 404.1575(e)(3).

### 2. Plaintiff's Amended Tax Returns Do Not Preclude a Finding of SGA

Plaintiff cites 20 C.F.R. §§ 404.1065, 404.1080(a), 404.1081, and 404.1096(a) for the proposition that "self-employment income" must be subject to the social security tax. (Doc. 18-1, p. 11). Because Plaintiff has amended her tax returns for years 2009 and 2010 to claim her business earnings as passive income and not subject to the social security tax, Plaintiff argues any potential overpayment has consequently been erased. (*Id.* at 12-14). Plaintiff further faults the ALJ for not obtaining an updated certified earnings record report showing the recharacterized income. (Doc. 23, pp. 5-6).

Though creative, this argument is unpersuasive. The regulations upon which Plaintiff relies define the types of covered earnings for which an individual receives credit for later receipt of benefits under the Social Security Act. *See* 20 C.F.R. §§ 404.1001 *et seq.* Plaintiff has introduced nothing to suggest that self-employment income considered for SGA must be subject to the self-employment income tax or otherwise entitle the employee to a credit.

Further, the reclassification of Plaintiff's business earnings as passive income is a red herring. A self-employed individual may be engaged in SGA regardless of whether she has an income. Work may be "gainful" regardless of whether a profit is received. *Id.* § 404.1572(b). The regulations envision self-employed individuals may receive income through capital investments and profit-sharing arrangements, and any income need not be immediately connected to a claimant's efforts. *Id.* § 404.1575(a)(2). The second and third tests for SGA in self-employed individuals do not require a showing that the claimant received any income. *See id.* § 404.1575(a)(2)(ii)-(iii). The Ninth Circuit itself recognized that non-salary compensation received from one's company shall be considered. *Keyes v. Sullivan*, 894 F.2d 1053, 1056-57 (9th Cir. 1990) (finding the claimant was compensated more than $300 per month in the form of

free room and board and other expenses). Plaintiff's recharacterized passive income alone does not prevent the Commissioner from considering whether Plaintiff engaged in SGA. Nor was an updated certified earnings record report needed to assess Plaintiff's actions on behalf of the company.

### 3. The Sedentary Nature of Plaintiff's Work Activities is Irrelevant

When Plaintiff was found disabled in 2010, the then-presiding ALJ concluded her sedentary residual functional capacity, age, education, and work experience would preclude her from working. (AR, pp. 50-53). Plaintiff notes many of the activities she performed for the company were sedentary and contends the present ALJ erred by deviating from the prior ALJ's opinion. (Doc. 23, pp. 7-8).

This argument is without merit. Where a claimant is engaged in SGA, benefits may be terminated regardless of whether the claimant has experienced medical improvement. 42 U.S.C. § 423(f); *Geschke v. Astrue*, 393 F. App'x 470, 472-73 (9th Cir. 2010) (citing *Katz v. Sec'y of Health & Human Servs.*, 972 F.2d 290, 293 (9th Cir. 1992)). Plaintiff's residual functional capacity has no bearing on whether she has engaged in SGA.

### 4. The ALJ's Finding of Overpayment Requires Clarification on Remand

The ALJ concluded Plaintiff was overpaid because the earnings she received from her company from 2010 to 2012 were above the SGA level. (AR, p. 25). In so finding, the ALJ noted that Plaintiff was the CFO, President, and statutory agent of the company she owns with her husband. (*Id.*). The ALJ further discussed other relevant details when explaining that Plaintiff was not "at fault" for the overpayment: Plaintiff "testified she handles the finances, licensing, insurance and human resources" for the company, and Plaintiff "materially participated in the

operation of the business during the relevant period, and earned the amounts reported on her certified earnings record." (*Id.* at 26).

Noticeably absent from the ALJ's decision is any reference to the legal authority for this finding of SGA. The ALJ clearly articulated that Plaintiff's earnings were from self-employment. (*Id.* at 25). Yet nowhere in the decision did the ALJ reference 20 C.F.R. § 404.1575, let alone the tests for determining SGA from self-employment activities. *Compare Coomer v. Astrue*, 446 F. App'x 894, 895 (9th Cir. 2011) (noting the ALJ's explicit application of the first test), *with Trautloff v. Comm'r of Soc. Sec. Admin.*, No. SACV 16-1564 JC, 2017 WL 1098815, at *4-5 (C.D. Cal. Mar. 22, 2017) (finding the ALJ's conclusory SGA analysis of a claimant's prior work did not permit meaningful review). Absent any indication which test the ALJ used to conclude Plaintiff was engaged in SGA from January 2010 to July 2012, the Commissioner's decision cannot be thoroughly scrutinized, and the Court cannot say for certain that the correct legal standards were applied. The Commissioner's finding may be correct, but it is not this Court's duty to construct the logical pathway to that conclusion.

The record contains evidence favorable to both sides of this issue. During the relevant time, Plaintiff served as President, CFO, and the registered agent of the company. (AR, pp. 379, 420). However, she testified her official positions in the company were nothing more than titles. (*Id.* at 434-435). According to Plaintiff, her husband oversees the business. (*Id.* at 396). Plaintiff did not receive a paycheck from the company, but she received slightly under $13,000 in each 2009 and 2010 due to her 51% ownership interest in the company. (*Id.* at 121, 215, 256). She performed a plethora of functions for the company: overseeing the expenses, legal items, and startup of the business; sitting in on personnel interviews; making bank deposits; advertising positions online; preparing and signing new client contracts; and paying the company's bills

before the company signed up for a bill-payer service. (*Id.* at 420-424, 426, 436-437, 441). She oversaw the financial, licensing, insurance, and human resources work in the Arizona office. (*Id.* at 390). Her husband and other individuals handle payroll, monthly expenses, taxes, banking, hiring, and making employee schedules. (*Id.* at 421-424, 438). In June 2011, Plaintiff estimated she spent between six and ten hours a week paying bills and processing licenses for the company. (*Id.* at 396). Plaintiff later estimated she spent 25 hours a month performing management duties for the company in May 2012. (*Id.* at 390). During the hearing, Plaintiff estimated she spent between 8 to 12 hours a week doing business-related activities between 2008 and 2011, but she clarified she spent more time at the beginning of the company. (*Id.* at 424-425, 434).

Because the ALJ's decision does not clearly articulate the test or tests used to find Plaintiff was engaged in SGA from January 2010 to July 2012, and because the evidence presented is not so clearly one-sided as to direct a decision, the Magistrate Judge **RECOMMENDS** that the ALJ's decision be **REVERSED IN PART** and **REMANDED** for the Commissioner to clarify the rationale supporting the overpayment finding.

Despite the recommendation to reverse and remand on the question of overpayment, evaluation of the remaining factors is warranted. As the ALJ found Plaintiff was not at fault for the overpayment, waiver would be required if repayment would be against equity and good conscience or if repayment would defeat the purpose of Title II. For the reasons that follow, the Magistrate Judge finds that neither avenue for waiver is satisfied.

## B. Equity and Good Conscience

Substantial evidence supports the ALJ's decision that recovery of the overpayment is not against equity and good conscience, and the ALJ applied the proper procedures to reach that decision.

Recovery of overpayment is against equity and good conscience when the claimant (1) changed her position for the worse, (2) relinquished a valuable right in reliance on the benefits, or (3) the claimant did not receive the overpayment because she lived in a different household from the overpaid person. 20 C.F.R. § 404.509(a). According to the regulations, the claimant's financial circumstances are immaterial to this inquiry. *Id.* § 404.509(b). That notwithstanding, Ninth Circuit precedent deviates from the regulations and requires a decision consider more than these three categories and be based on "a broad concept of fairness" considering the totality of the circumstances. *Quinlivan v. Sullivan*, 916 F.2d 524, 527 (9th Cir. 1990). Through Social Security Acquiescence Ruling 92-5(9) ("SSAR 92-5(9)"), the Ninth Circuit's broadened definition solely applies to cases involving claimants who lived in the Ninth Circuit during the administrative decision-making levels, like Plaintiff. *See* SSAR 92-5(9), 1992 WL 248902, at *3 (S.S.A. June 22, 1992).

Citing 20 C.F.R. § 404.509, SSAR 92-5(9), and *Quinlivan*, the ALJ found recovery of the overpayment would not be against equity and good conscience because Plaintiff has other "material resources," did not change her position for the worse, and did not relinquish a valuable right in reliance on the overpayment. (AR, p. 27).

Applying a broad concept of fairness to Plaintiff's individual circumstances, substantial evidence supports the ALJ's conclusion that repayment would not be against equity and good conscience. The ALJ noted the financial status of Plaintiff's company, Plaintiff's monthly

13

expenses which included repaying a business loan, her readily available assets valued at approximately $330,000, and her annual business income exceeding $12,000. (*Id.*). While Plaintiff reported that she and her husband filed for bankruptcy after she was awarded benefits (*Id.* at 34), she did not establish that her assets at the time of the administrative hearing were affected by her bankruptcy. Nor does Plaintiff explain why she was willing to incur an early withdrawal penalty when she withdrew $30,000 from her IRA in 2008 (*Id.* at 157) but is not willing to do so now that she has allegedly received too much of the taxpayers' money.

Faced with a similar issue, a district court in Oregon upheld an ALJ's conclusion of no-waiver where the overpaid claimant had a monthly income from a disability insurance annuity, income from rental properties, and an IRA with a balance of over $151,000. *Heiss v. Colvin*, No. 1:14-CV-01595-PA, 2015 WL 9165895, at *3-4 (D. Or. Dec. 16, 2015). Compare this to a case in California where repayment was waived because the claimant was "barely making ends meet" and could not reasonably pay back the $40,000 she owed. *Redfern v. Berryhill*, No. 15-CV-03883-JSC, 2017 WL 818856, at *7 (N.D. Cal. Mar. 2, 2017). From the evidence presented, Plaintiff's financial situation is far more similar to the *Heiss* plaintiff than it is to the *Redfern* plaintiff. The ALJ's finding that requiring repayment would not be inequitable or against good conscience based on a broad concept of fairness is supported by substantial evidence and should stand.

Plaintiff complains the ALJ did not apply a "broad concept of fairness" standard as required by *Quinlivan* and SSAR 92-5(9). (Doc. 18-1, p. 17). Instead, Plaintiff argues the ALJ only considered the narrow definitions set forth in 20 C.F.R. § 404.509, and contradictorily Plaintiff argues the ALJ improperly considered her financial resources. (*Id.*). Plaintiff states it would be inequitable to require repayment because she has monthly expenses of $4,232, she filed

bankruptcy due to excessive bills, and liquidating her IRA would result in a tax penalty and deprive her of potential capital gains. (*Id.* at 18-19).

Though Plaintiff faults the ALJ for not considering the "broad concept of fairness," she does not indicate what the ALJ should have considered in addition to the regulatory factors, Plaintiff's liabilities, and Plaintiff's "other material resources." Moreover, the ALJ was correct to consider Plaintiff's financial status. As is explained in SSAR 92-5(9), the "broad concept of fairness" standard encompasses "the amount and steadiness of the claimant's income, and the claimant's assets and material resources." SSAR 92-5(9), 1992 WL 248902, at *3.

Plaintiff additionally maintains repayment of benefits would be against equity and good conscience under 20 C.F.R. § 404.510a(a) and (b) because Plaintiff annually reported her earnings from the company to the Social Security Administration and she continued to receive benefit payments. (Doc. 23, p. 10). This claim is problematic for two reasons. First, the claim was first raised in Plaintiff's reply which is procedurally improper and would generally be deemed waived. *See, e.g.*, *Graves v. Arpaio*, 623 F.3d 1043, 1048 (9th Cir. 2010); *Williams-Carter v. Comm'r of Soc. Sec.*, No. 2:13-CV-1744-KJN PS, 2015 WL 367494, at *4 (E.D. Cal. Jan. 27, 2015). Notwithstanding the issue of waiver, the claim is also problematic because 20 C.F.R. § 404.510a does not contain any subsections and solely concerns whether an individual is at fault for an entitlement overpayment. As the ALJ found Plaintiff was not at fault for her alleged overpayment, further application of 20 C.F.R. § 404.510a itself is unnecessary.

Possibly counsel inadvertently cited the wrong regulation. Repayment will be waived as inequitable and against good conscience where a claimant accepted "overpayment because of reliance on erroneous information from an official source within the Social Security Administration . . . with respect to the interpretation of a pertinent provision of the Social

Security Act or regulations pertaining thereto." 20 C.F.R. §§ 404.510a, 404.512(a). This waiver avenue is not available, however, because Plaintiff has not identified a Social Security Administration agent's incorrect interpretation of the Social Security Act or its regulations. *See, e.g.*, *Kerr v. Astrue*, No. C10-5824BHS, 2012 WL 529547, at *3 (W.D. Wash. Feb. 17, 2012) (holding similarly when determining fault under 20 C.F.R. § 404.510(b)). Such a conclusory claim does not warrant relief.

Substantial evidence supports the ALJ's conclusion that repayment would not be against equity and good conscience. The ALJ's conclusion that repayment would not be against equity and good conscience should therefore be **AFFIRMED**.

## C. Purpose of Title II

The ALJ's decision that repayment would not defeat the purpose of Title II is supported by substantial evidence and is procedurally proper.

The Commissioner's actions will generally defeat the purpose of Title II when they "deprive a person of income required for ordinary and necessary living expenses," considering the claimant's other sources of income or financial resources. 20 C.F.R. § 404.508(a). "This depends upon whether the person has an income or financial resources sufficient for more than ordinary and necessary needs, or is dependent upon all of h[er] current benefits for such needs." *Id.* Where an individual needs substantially all of her income to pay her ordinary and necessary living expenses, recovery of overpaid benefits will defeat the purpose of Title II. *Id.* § 404.508(b).

Finding that repayment would not defeat the purpose of Title II, the ALJ noted Plaintiff's other financial resources would allow her to pay ordinary and necessary daily living expenses. (AR, p. 27). The ALJ noted: Plaintiff's company netted a gross profit of $190,034 in 2011 and

paid out $208,434.02 to employees in 2012; Plaintiff claimed monthly expenses of $4,232 which included repayment of a business loan; Plaintiff reported $300,000 in household and liquid assets in an IRA, $31,665 in savings for her daughter, and self-employment income exceeding $12,000 for two consecutive years. (*Id.*). Plaintiff had earlier indicated that her IRA funds were readily available. (*Id.* at 31). These significant assets are substantial evidence that repayment will not prevent Plaintiff from meeting her ordinary and necessary living expenses.

In stark contrast, a district court in California concluded repayment would defeat the purposes of Title II where the claimant's household monthly income exceeded household monthly expenses by less than $25, the claimant had spent the entire amount of overpayment, the claimant could not otherwise afford to repay the amount due, and the claimant proceeded *in forma pauperis* at the district court. *Vallejo v. Astrue*, No. 2:09-CV-03088 KJN, 2011 WL 2925647, at *13-14 (E.D. Cal. July 15, 2011).

Still maintaining she is eligible for benefits, Plaintiff contends her circumstances are special and not subject to the general rule set forth in 20 C.F.R. § 404.508. (Doc. 18-1, p. 20). As Plaintiff's eligibility is still in question, this argument is not persuasive.

Plaintiff next argues she is entitled to waiver of repayment pursuant to 20 C.F.R. §§ 404.510(e) and 404.512(b). (*Id.* at 20-23). These regulations provide that adjustment or recovery will be waived when the claimant reasonably believed her preentitlement earnings would not be considered for purposes of overpayment and recovery would work a financial hardship or otherwise be inequitable. 20 C.F.R. §§ 404.510(e), 404.512(b). In this instance, Plaintiff received Title II benefits from March 2008 through July 2012. Her self-employment income from 2009 through 2012 is therefore not considered preentitlement earnings. Nor, as previously explained, would repayment be inequitable in light of Plaintiff's other material resources.

17

Finding substantial evidence supports the ALJ's conclusion that repayment will not defeat the purpose of Title II, and finding no merit to Plaintiff's arguments otherwise, the undersigned recommends the ALJ's finding be **AFFIRMED**.

D. **Due Process and Equal Protection**

Contending the Commissioner erred by finding Plaintiff engaged in SGA, Plaintiff argues the termination of her benefits deprived her of her rights to due process and equal protection under the Fifth and Fourteenth Amendments to the United States Constitution. (Doc. 18-1, p. 23). For this proposition, Plaintiff cites *Mathews v. Eldridge*, 424 U.S. 319 (1976), *Morrissey v. Brewer*, 408 U.S. 471 (1972), *Vinson v. Campbell County Fiscal Court*, 820 F.2d 194 (6th Cir. 1987), and *Loudermill v. Cleveland Board of Education*, 721 F.2d 550 (6th Cir. 1983). (*Id.*). Plaintiff additionally purports to reserve the right to later challenge the constitutionality of 42 U.S.C. § 404 and the Commissioner's regulations on overpayments. (*Id.* at 24).

The cases put forth by Plaintiff do not aid her cause. In *Mathews*, the Supreme Court found the Social Security Administration's administrative steps for terminating disability benefits "fully comport with due process." *Mathews*, 424 U.S. at 349. Contrary to Plaintiff's argument, *Mathews* supports the ALJ's decision.

The remaining cases are not relevant. *Morrissey* concerned the process due to an individual before revoking his parole. *Morrissey*, 408 U.S. at 472. Plaintiff cites *Vinson* in support of her equal protection challenge, but the case citation refers to a substantive due process challenge. *See Vinson*, 820 F.2d at 198. Further, it is unclear how *Loudermill* affects this suit, seeing as that case involved an employee's right to a pre-termination hearing under Ohio state law. *See Loudermill*, 721 F.2d at 562-63.

Plaintiff's assertion that she may later challenge the constitutionality of various statutes and regulations is conclusory and does not merit further attention. Any claim not raised and briefed in Plaintiff's motion is waived. *See Greger v. Barnhart*, 464 F.3d 968, 973 (9th Cir. 2006); *Lee v. Colvin*, No. 2:14-CV-1560 AC, 2015 WL 5544508, at *8 n.13 (E.D. Cal. Sept. 18, 2015).

Plaintiff has not set forth any basis for finding a deprivation of her rights to due process and equal protection. This claim of error is without merit.

## VI. RECOMMENDATION

For the foregoing reasons, the Magistrate Judge **RECOMMENDS** that *Plaintiff's Motion for Judgment Based Upon the Administrative Record* (Doc. 18) be **GRANTED IN PART** and **DENIED IN PART** and the Commissioner's decision be **AFFIRMED IN PART**, **REVERSED IN PART**, and **REMANDED** for further consideration and explanation as to whether Plaintiff and her daughter were overpaid.

Pursuant to Rule 72(b) of the Federal Rules of Civil Procedure, the parties have fourteen days, after being served with a copy of this R&R to serve and file written objections to the findings and recommendation proposed herein. A party shall respond to the objecting party's objections to this R&R within fourteen days after being served with a copy thereof. Failure to file specific objections within fourteen days of receipt of this R&R may constitute a waiver of further appeal. *Thomas v. Arn*, 474 U.S. 140, 155 (1985).

**ENTERED** this 12th day of July, 2017.

/s/ Joe B. Brown
JOE B. BROWN
UNITED STATES MAGISTRATE JUDGE