# UNITED STATES DISTRICT COURT
# MIDDLE DISTRICT OF TENNESSEE
# NASHVILLE DIVISION

| | |
|---|---|
| SUSAN K. UNICE, | ) |
| | ) |
|     **Plaintiff,** | ) |
| | ) |
| v. | )   No. 3:16-02469 |
| | )   **Judge Trauger/Brown** |
| NANCY A. BERRYHILL, | ) |
| ACTING COMMISSIONER | ) |
| OF SOCIAL SECURITY, | ) |
| | ) |
|     **Defendant.** | ) |

## MEMORANDUM

### I. INTRODUCTION

Plaintiff Susan Unice brought this action in the district court pursuant to 42 U.S.C. § 405(g) and 1383(c) seeking judicial review of the decision of the Social Security Administration (SSA) through its Commissioner (the Commissioner) that plaintiff and her daughter were overpaid disability benefits under Title II of the Social Security Act (the Act), 42 U.S.C. §§ 416(I) and 423(d), and that recovery of the overpayment would not be waived.

Presently before the court are plaintiff's objections (Doc. 30) to the Magistrate Judge's July 12, 2017 Report and Recommendation (R&R) (Doc. 29) that recommended plaintiff's motion for judgment on the administrative record (Doc. 18) be **GRANTED IN PART** and **DENIED IN PART**, the Commissioner's decision be **AFFIRMED IN PART** and **REVERSED IN PART**, and this action be **REMANDED** for further consideration and explanation regarding the overpayment of benefits to plaintiff and her daughter. The commissioner did not reply to plaintiff's objections.

### II. STANDARD OF REVIEW

When a magistrate judge enters a R&R regarding a dispositive matter, the district court must review *de novo* any portion, proposed findings, or recommendations in the R&R to which a proper

objection is made. 28 U.S.C. § 636(b)(1); Rule 72(b)(3), Fed. R. Civ. P.. In conducting its review, the district court may accept, reject, modify the recommended disposition in whole or in part, receive further evidence, or return the matter to the magistrate judge with instructions. 28 U.S.C. § 636(b)(1); Rule 72(b)(3), Fed. R. Civ. P..

The district court's review of the Commissioner's final decision in a Social Security case is limited to determining whether the Commissioner's decision is supported by substantial evidence in the record, and whether the decision was made pursuant to proper legal standards. 42 U.S.C. §§ 405(g) and 1381(c); *Gayheart v. Comm'r of Soc. Sec.*, 710 F.3d 365, 374 (6th Cir. 2014). Substantial evidence is less than a preponderance but more than a scintilla; it refers to relevant evidence that a reasonable mind might accept as adequate to support a conclusion. *Richardson v. Perales*, 402 U.S. 389, 401 (1971); *see Gentry v. Comm'r of Soc. Sec.*, 741 F.3d 708, 722 (6th Cir. 2003). The Commissioner's decision must stand if substantial evidence supports the conclusion reached, even if the evidence supports a different conclusion. *Gayheart*, 710 F.3d at 374.

### III. PROCEDURAL HISTORY

The procedural history set forth in the R&R (Doc. 29, pp. 1-2) has been reviewed, deemed factually correct, and is incorporated herein by reference.

### IV. FACTUAL BACKGROUND

Plaintiff asks the court "to carefully review all of the facts and testimony contained in the record and to minimally rely on [the Magistrate Judge's] recitation of the facts in the R&R" (Doc. 30, p. 4) because, according to plaintiff, the Magistrate Judge misrepresented the facts, including portions of plaintiff's testimony at the February 20, 2014 hearing (the hearing) before Administrative Law Judge (ALJ) Joan Knight (Doc. 16, pp. 405-44). (Doc. 30, pp. 2-4) Plaintiff's claims of misrepresentation are addressed below.

2

Plaintiff asserts first that the Magistrate Judge "misquoted" "the phrase 'everything that's done' out of context" (Doc. 30, p. 2) in her testimony at the hearing when he wrote:

> During the Administrative hearing, Plaintiff testified as to her involvement in the company. From 2008 to 2012, Plaintiff oversaw the expenses and startup of the business and otherwise oversaw **'[e]verything that's done.'** (*Id*. at 420-421)[1] Asked if she materially participated in the day-to-day operations of the company, Plaintiff said she did to the extent of <u>overseeing</u> the financial and sometimes the legal end of things. (*Id*. at 436-37) Between 2008 and 2011, Plaintiff stated she spent between 8 to 12 hours a week doing business-related activities, later clarifying she spent more time when the company was founded. (*Id*. at 424-425, 434)

(Doc. 29, p. 3)(bold and underline added) Plaintiff maintains that the text in bold above "overstates [plaintiff's] efforts and abilities" because she also testified that she "just overs[aw] the expenses." (Doc. 30, p. 2)(bold omitted)

Plaintiff's testimony at the hearing that is relevant to the portion of the R&R quoted above is as follows:

> Q      Okay. Can you tell me, 2008 through 2012, on a weekly basis, what . . . were your activities in the business?
>
> A      Mostly overseeing the expenses, the startup of the business. . . .
>
>               . . .
>
> Q      . . . . I just oversee the expenses. **Every thing that's done, I oversee.** There is somebody else that does my payroll. I have an accountant do my monthly expenses, my taxes.
>
>      . . . . I have people that do the banking . . . . I have people that hire, fire – again, I mean, I'm overseeing it, but I'm not really instrumental in the day-to-day

---

[1] *Id*. here refers to the administrative record (Doc. 16).

>               activity that goes on.
>                              . . .
>
> Q      So did you sit in on the interviews . . . .
>
> A      I was sitting in on some of the interviews back when
>        I was in South Carolina . . . .
>                              . . .
>
> Q      Who was [in] charge of advertising for a position?
>        How was that done?
>
> A      Through Craigslist.
>
> Q      And who did that?
>
> A      That was myself and my husband.

(Doc. 16, pp. 420-23)(bold added) Upon subsequent questioning by counsel, plaintiff testified that her "day-to-day" participation in the business was "overseeing the financial end and . . . sometimes the legal end of things." (Doc. 16, p. 437)

As shown above, the Magistrate Judge did not "misquote" plaintiff statement, "[e]verything that's done." Moreover, read in its entirety, the portion of the R&R quoted above at p. 3 accurately reflects plaintiff's complete testimony, and does not "overstate[]" her participation in the activities of the company.

Plaintiff asserts next that the Magistrate Judge "removed critical context" from plaintiff's testimony "regarding overseeing the financial and sometimes legal end of things" by omitting plaintiff's clarification of what she meant by "overseeing." (Doc. 30, pp. 2-3) The term "overseeing" refers to the underlined text in the excerpt from the R&R quoted above at page 3. Plaintiff asserts that, "[b]y overseeing . . . [she] . . . meant protecting her financial interest only, but not working for the company overseeing operations as the judge implies." (Doc. 30, pp. 2-3)

Plaintiff fails to explain the "critical" difference between <u>working</u> to oversee the financial

4

and legal matters of the company and <u>working</u> to protect one's financial interest, or how the absence of reference to the latter calls the accuracy of the Magistrate Judge's recitation of the facts into question. Working is working. In any event, referring to the transcript of the hearing, the Magistrate Judge did in fact note that plaintiff's "activity in the business was primarily to protect her interest in the company. (*Id*. 434, 437)." (Doc. 29, p. 4) Again, read in its entirety, the R&R accurately reflects plaintiff's testimony at the hearing.

Next, plaintiff asserts that the Magistrate Judge's "comments about activities performed by [plaintiff] as if they were extensive, though in reality, these activities were minimal," noting as examples such activities as: making bank deposits, signing contracts, paying bills, drafting documents, preparing taxes, and writing checks. (Doc. 30, p. 3) The Magistrate Judge wrote in the R&R that plaintiff and her husband "advertised available job openings online," but that plaintiff "was responsible for preparing and signing . . . contracts . . . mak[ing] bank deposits . . . and . . . paying business expenses with checks." (Doc. 29, p. 4) The Magistrate Judge also noted plaintiff's testimony that "[p]ayroll, monthly expenses, taxes, and employee hour schedules were performed by another individual." (Doc. 29, p. 4)

Plaintiff does not dispute whether plaintiff actually performed the activities identified by the Magistrate Judge, only that the tenor of the R&R misleads the reader into believing that those activities were "extensive." A plain reading of the R&R shows that the Magistrate Judge addressed these activities without adjectives, adverbs, or descriptive expressions that would lead a reasonable person to interpret them as "extensive." Once again, the R&R accurately reflects the facts.

Plaintiff asserts next that she "never used the terminology 'erased' in reference to the overpayment" that is at the heart of this matter. (Doc. 30, p. 3) The Magistrate Judge did not attribute the word "erased" to plaintiff when he wrote: "Because Plaintiff has amended her tax

5

returns for years 2009 and 2010 to claim her business earnings as passive income and not subject to the social security tax, Plaintiff argues that any potential overpayment has been erased." (Doc. 29, p. 9) He did, however, refer to Doc. 18-1, pp. 12-14 – plaintiff's December 30, 2016 brief in the District Court of Arizona – in which plaintiff made the following argument: "Ms. Unice provided her amended tax returns effectively **erasing** the alleged 'self-employment' income and rendering it not subject to social security tax." (Doc. 18-1, p. 14)(bold added) Apart from tense, the verb "erased" is the same as the verb "erasing." This argument is frivolous.

Finally, plaintiff challenges the Magistrate Judge's statement: "'Plaintiff has introduced nothing to suggest that self-employment income considered for SGA [substantial gainful activity] must be subject to the self-employment income tax or otherwise entitle the employee to a credit.'" (Doc. 30, pp. 3-4) The statement that plaintiff objects to is found in ¶ IV.A.2 in the R&R. (Doc. 29, p. 9) Plaintiff asserts that she "has produced evidence showing payment of self-employment tax due to the self-employment income that was incorrectly characterized as non-passive. (AR[2] at 205) (line 56), 215, 250 (line 56) and 256.)" (Doc. 30, p. 4) The foregoing references to the administrative record are copies of plaintiff's 2009 and 2010 federal income tax returns which, as discussed below at pp. 7-8, were amended following the hearing. Plaintiff misconstrues the R&R. The Magistrate Judge meant that plaintiff has not provided any argument, references to the record, or citation to relevant authority to support her argument, not that she failed to file any documents that showed she amended her tax returns. The R&R again does not misstate or misconstrue the facts.

As shown above, plaintiff's request that the "Court . . . carefully review all of the facts and testimony in the record and to minimally rely on [the Magistrate Judge's] recitation of the facts" is groundless. As plaintiff makes no other claims of defect as to the Magistrate Judge's recitation of

---

[2] "AR" refers to the Administrative Record, Doc. 16.

the facts, and as no other defects have come to light in this review, the Magistrate Judge's recitation of the facts is deemed correct and incorporated herein by reference.

## V. PLAINTIFF'S OBJECTIONS TO THE R&R

### A. Whether the Magistrate Judge Erred in Determining That Plaintiff's Amended 2009 and 2010 Tax Returns Precluded a Finding of SGA[3,4]
### (Doc. 30, pp. 4-5)

Plaintiff argues that the Magistrate Judge erred in characterizing the reclassification of her 2009 and 2010 earnings from self-employment income to investment activity as a "red herring." (Doc. 30, pp. 4-5) The "red herring" reference is found in the Magistrate Judge's analysis of whether plaintiff's amended returns for tax years 2009 and 2010 precluded a finding of SGA, and his ultimate conclusion that they did not. (Doc. 29, pp. 9-10)

Citing 20 C.F.R. § 404.1572(b), plaintiff acknowledges that "'[a] self-employed individual may be engaged in SGA regardless of whether she has an income,' and '[w]ork may be 'gainful' regardless of whether a profit is received.'" (Doc. 30, p. 5) Plaintiff argues, however, that § 404.1572(b)[5] "does not and should not apply because [her] earnings were due to a return from investment; not compensation for any work activity."[6] (Doc. 30, p. 5)

---

[3] The caption of plaintiff's first argument reads as follows: "Plaintiff Objects to Magistrate Judge Brown's Finding That the Sedentary Nature of Plaintiff's Work Activities Is Irrelevant and That Plaintiff's Residual Functional Capacity Has No Bearing on Whether She Has Engaged in Substantial Gainful Activity." (Doc. 30, ¶ II, p. 4)(bold omitted) The actual arguments presented in the objection to the R&R do not square with the caption. The court has parsed the arguments below as they are apparent from the text in plaintiff's objection.

[4] Plaintiff does not identify this argument in the caption appearing in n. 3 above. It appears, however, that plaintiff intended to argue this issue.

[5] Title 20 C.F.R. § 404.1572(b) reads as follows: "Gainful work activity. Gainful work activity is work activity that you do for pay or profit. Work activity is gainful if it is the kind of work usually done for pay or profit, whether or not a profit is realized."

[6] It is not disputed that the Commissioner notified plaintiff in July 2011 and August 2012 that her disability ended in October 2009 because she was engaged in SGA. It also is not disputed that plaintiff amended her 2009 and

7

Plaintiff asserts that her "income from . . . investment activity is known as unearned or passive income, which is not subject to self-employment tax." (Doc. 30, p. 5) Plaintiff cites 42 U.S.C. §§ 411, 1382a, 26 U.S.C. §§ 469, 1401 and 1402 in support of her underlying argument that this recharacterization of income precludes a finding of SGA. However, plaintiff makes no effort to explain how these statutory references show that her amended tax returns preclude a finding of SGA, nor has the court's own review of these statutory references yielded such a conclusion. Consequently, this claim of error is without merit.

### B. Whether the Magistrate Judge Erred in Determining That the Sedentary Nature of Plaintiff's Work Is Irrelevant and That Plaintiff's Residual Functional Capacity Has No Bearing on Whether She Participated in SGA (Doc. 30, pp. 5-8)

Plaintiff asserts that the "sedentary nature of [her] alleged work activities is highly relevant," and that the Magistrate Judge's determination to the contrary is "clearly erroneous." (Doc. 30, p. 5) This argument pertains to the Magistrate Judge's analysis in paragraph IV.A.3 at p. 10 of the R&R, the relevant portion of which is quoted below for convenience of reference:

> Where a claimant is engaged in SGA, benefits may be terminated regardless of whether the claimant has experienced medical improvement. 42 U.S.C. § 423(f); *Geschke v. Astrue*, 393 F. App'x 470, 472-73 (9th Cir. 2010)(citing *Katz v. Sec'y of Health and Human Servs.*, 972 F.2d 290, 293 (9th Cir. 1992)). Plaintiff's residual functional capacity has no bearing on whether she has engaged in SGA.

(Doc. 29, p. 10) Title 40 U.S.C. § 423(f), the standard of review for terminating disability benefits, provides that benefits may be terminated whether, or not, the claimant has improved medically if the claimant is engaged in SGA. *Katz* held that "[I]t is not necessary to show medical improvement

---

2010 federal income tax returns to avoid having to repay benefits improperly received after the administrative hearing.

8

where SGA is the issue." *Katz*, 972 F.2d at 293. *Geschke* repeated the holding in *Katz* that "medical improvement is irrelevant where SGA is at issue." *Geschke*, 393 Fed.Appx. at 472-73.

Plaintiff argues first that the Magistrate Judge "misapplied" § 423(f). However, following a discussion of the background surrounding her initial award of benefits, plaintiff summarizes her argument as follows: "The Secretary has not presented any evidence that [plaintiff] no longer qualifies under the Medical-Vocational Guidelines." (Doc. 30, p. 6) Whether the Secretary has or has not presented any evidence that plaintiff no longer qualifies for benefits under the Medical-Vocational Guidelines is not relevant to whether plaintiff is engaged in SGA. In other words, the issue does not turn on whether or not plaintiff is qualified medically for benefits; it turns on whether plaintiff engaged in SGA. Plaintiff's first argument is without merit.

Plaintiff argues next that the Magistrate Judge erred in relying on *Katz* arguing that *Katz* "is distinguishable because the court determined that earnings beyond a certain guideline created a rebuttable presumption of SGA." (Doc. 30, p. 7) Plaintiff argues further that she "has rebutted the presumption of SGA by a showing with substantial evidence that her income was passive." (Doc. 30, p. 7)

Plaintiff is correct that *Katz* provides that the SGA "earnings presumption can be rebutted" by considering various factors, *e.g.*, "the amount earned, time spent working, quality of the claimant's performance, special working conditions, and the possibility of self-employment." *Katz*, 972 F.2d at 293. However, as noted above, plaintiff argues that she "has rebutted the presumption of SGA by showing with substantial evidence that her income was passive." The nature of one's income is not one of the factors considered under *Katz*. Consequently, plaintiff's second argument is without merit.

Finally, plaintiff asserts that the "Medical-Vocational Rules were . . . overhauled to the extent

9

that may render some of the Court's decision in *Katz* inapplicable." (Doc. 30, pp. 7-8) Plaintiff provides no factual allegations, references to the record, or citations to relevant authority in support of this apparent argument.

Assuming that plaintiff's reference to an overhaul of the "Medical-Vocation Rules" is intended as an argument, plaintiff has provided no factual allegations, references to the record, or citations to relevant authority in support of such an argument. The district court is not obligated on judicial review to supply factual allegations in support of claims where no facts are alleged. *See Hollon ex rel. Hollon v. Comm'r of Soc. Sec.*, 447 F.3d 477, 491 (6th Cir. 2006)("[W]e decline to formulate arguments on [appellant's] behalf"). Consequently, this argument is waived. *See Moore v. Comm'r of Soc. Sec.*, 573 Fed.Appx. 540, 543 (6th Cir. 2014)(citing *United States v. Stewart*, 628 F.3d 246, 256 (6th Cir. 2010)("Issues averted to in a perfunctory manner, unaccompanied by some effort at developed argumentation, are deemed waived. It is not sufficient for a party to mention a possible argument in the most skeletal way, leaving the court to . . . put flesh on its bones.").

Plaintiff's second claim of error is without merit for the reasons explained above.

**C. Whether the Magistrate Judge Erred in Finding That Substantial Evidence Supports the ALJ's Conclusion That Repayment Would Not Be Against Equity and Good Conscience**
**(Doc. 30, pp. 8-12)**

Plaintiff asserts that the Magistrate Judge's determination that "substantial evidence supports the ALJ's conclusion that over payment would not be against equity and conscience'" was "clearly erroneous." (Doc. 30, pp. 8-12) More particularly, plaintiff asserts that the ALJ "did not apply ' a broad concept of fairness' to [her] waiver request,'" and that the ALJ misapplied *Quinlivan*, as did the Magistrate Judge. (Doc. 30, p. 10)

Plaintiff argues first that the Magistrate Judge erred in relying on *Heiss v. Colvin*, No. 1:14-

cv-01595-PA, 2015 WL 9165895 (D. Or. Dec. 16, 2015) and *Redfern v. Berryhill*, No. 15-cv-03883-JSC, 2017 WL 818856 (N.D. Ca. Mar. 2, 2017) because neither case constitutes "binding authority, and because both cases "apply the same narrow exceptions that "the Ninth Circuit discouraged in *Quinlivan v. Sullivan*, 916 F.2d 524, 527 (9th Cir. 1990)"[7] to which plaintiff cites with approval. (Doc. 30, pp. 8-9) As shown below at n. 7, the Ninth Circuit's holding in *Quinlivan* was – in essence – that the "broad language" in 20 C.F.R. § 404.509(a) "'against equity and good conscience'" "requires the trier of fact to draw upon precepts of justice and morality, rather than the comparatively rigid and specific rules found in the regulation." *Quinlivan*, 916 F.2d 526.

The Magistrate Judge correctly stated the holding in *Quinlivan*, and applied that holding correctly throughout his analysis in the R&R, using *Heiss* and *Redfern* as examples. (Doc. 29, pp. 13-15) Although plaintiff argues – correctly – that neither *Heiss* nor *Redfern* constitutes binding authority, they are instructive and, as such, constitute persuasive authority on this issue. More particularly, *Heiss* demonstrates the application of *Quinlivan* to a case that is factually similar to plaintiff's in the context of the strength of a claimant's ability to repay the overpayment of benefits, and *Redfern* demonstrates the application of *Quinlivan* in a case where the claimant was not required to repay because he barely was "making ends meet." Both cases demonstrate the application of the notions of equity, good conscience, and fairness articulated in *Quinlivan*. Plaintiff's argument that the Magistrate Judge erred in relying on *Heiss* and *Redfern* is without merit.

---

[7] The Act provides for waiver of overpayments if: 1) a claimant is without fault in receiving payment; 2) requiring repayment would either defeat the purposes of Title II or would be against "equity and good conscience." 42 U.S.C. § 404(b). The Act does not define the phrase "against equity and good conscience"; however, the phrase has been interpreted in 20 C.F.R. § 404.509(a) to pertain to situations where the claimant changed his or her position for the worse, relinquished a valuable right, or lived in a separate household from the overpaid person at the time of overpayment and did not receive the overpayment. Financial need is irrelevant to this determination. 20 C.F.R. § 404.509(b). *Quinlivan* held that this interpretation was unreasonably narrow, that the court was not bound by the interpretation where the regulation limiting the meaning of the phrase had no foundation in the statute or legislative history, and that Congress intended the phrase "against equity and good conscience" to convey a broad concept of fairness to waiver requests.

As noted above, plaintiff's overarching argument is that the ALJ did "not apply 'a broad concept of fairness'" to her waiver of repayment request, that the ALJ misapplied *Quinlivan*, and that the Magistrate Judge erred in determining the "ALJ's conclusion that repayment would not be against equity and good conscience." (Doc. 30, pp. 8, 10-11)

The ALJ wrote the following in determining that overpayment would not defeat the purpose of Title II and would not be against equity and good conscience:

> [T]he claimant does not meet the requirements of 20 CFR 404.508 and recovery of the overpayment would not defeat the purpose of Title II. The claimant has other financial resources and the reduction of her monthly benefits for repayment purposes would not deprive her of the income required for ordinary and necessary daily living expenses. A review of the claimant's income and expenses indicates she and her spouse operate a successful business, which netted a gross profit of $190,034.00 in 2011 and paid out total payments of $208,434.02 to employees in 2012 (Exhibit 20 and 38). On the Request for Waiver, dated January 2013, the claimant enumerated monthly expenses of $4,232.00, which included repayment of business loan in this total amount (Exhibit 1). The claimant also reported she has approximately $300,000 in household and liquid assets in an IRA (inheritance) and $31,665 in savings for her daughter. As well, her certified earnings record indicates she earned $12,841 in self-employment income in 2011 and $12,720.00 in self-employment income in 2010 (Exhibit 24).
>
> Assuming the claimant was not at fault, **the undersigned also finds that the recovery of the overpayment would not be against equity and good conscience**. The claimant has other material resources, and did not change her position for the worse or relinquish a valuable right in reliance on the overpayment (20 CFR 404.509, AR 92-5(9), **Quinl[iv]an v. Sullivan, 916 F.2d 524 (9th Cir. 1990)).**

(Doc. 16, p. 27)(bold added)

Apart from asserting that the ALJ did not apply a broad concept of fairness in her decision, plaintiff does not specify what else the ALJ should have considered that would have made a

12

difference and why.[8] Apart from asserting that the ALJ misapplied *Quinlivan*, plaintiff does not explain that either, nor is the alleged misapplication apparent from the excerpt of the decision quoted above at p. 12. Plaintiff simply asserts that the ALJ misapplied the holding. Assuming for the sake of argument that plaintiff's position is that the apparent focus in the decision on the strength of plaintiff's ability to repay was improper under *Quinlivan*, plaintiff provides no argument or citation to relevant authority that *Quinlivan* trumps the requirement to repay in situations where, as here, the claimant can afford to repay without violating the notions of equity, good conscience, or the broad concept of fairness. Neither has plaintiff shown that reference to "equity and good conscience" in the context of statutory authority governing repayment violates *Quinlivan*.

As shown in the excerpt from the ALJ's decision quoted above at p. 12, the ALJ applied the standard under *Quinlivan* and – although not determinative – even went so far as citing *Quinlivan* in her decision. Plaintiff also has failed to show that the ALJ misapplied *Quinlivan*. Accordingly, the Magistrate Judge did not err in concluding that repayment would not be against equity and good conscience. This argument is without merit.

Finally, plaintiff argues that the Magistrate Judge erred in concluding that plaintiff raised this issue for the first time in her reply to defendant's response and, as such, it is procedurally waived. (Doc. 30, p. 12) The issue here turns on whether the ALJ's decision, as quoted above at p. 12, was supported by substantial evidence, and whether the Magistrate Judge was correct in his analysis of the ALJ's decision on this point – not whether the Magistrate Judge misstated the procedural rule

---

[8] Plaintiff cites the following cases in support of her argument: *Groseclose v. Bowen*, 809 F.2d 502 (8th Cir. 1987)(cited as authority for the holding in *Quinlivan*), *Newton v. Chater*, 103 F.3d 139 (9th Cir. 1996)(citing *Quinlivan*), *Audet v. Astrue*, No. 4:08-cv-3220, 2009 WL 1664598 (D. Neb. June 11, 2009)(citing *Quinlivan*), and *Stolztfus v. Astrue*, No. 11-6056 (E.D. Pa. May 1, 2013)(citing *Quinlivan*). These cases are cumulative in that they either gave rise to the holding in *Quinlivan*, or stand for the same proposition as *Quinlivan*. None of these cases adds anything to plaintiff's argument.

on waiver. In any event, the Magistrate Judge addressed this issue in the R&R. (Doc. 29, pp. 15-16) Consequently, this argument is frivolous.

## VI. CONCLUSION

For the reasons explained above, the Court will: 1) **OVERRULE** plaintiff's objections to the R&R (Doc. 30); 2) **ACCEPT** and **ADOPT** the R&R (Doc. 29) as the court's's findings of fact and conclusions of law; 3) **GRANT IN PART** and **DENY IN PART** plaintiff's motion for judgment on the administrative record; 4) **AFFIRM IN PART** and **DENY IN PART** the Commissioner's decision; 5) and this action be **REMANDED** for further consideration and explanation regarding the overpayment of benefits to plaintiff and her daughter. An appropriate order is entered herewith.

**ENTER** this 12th day of September, 2017.

Aleta A. Trauger
United States District Judge